IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD W.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
_____

Case No. 6:18-cv-01830-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Richard W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1964, plaintiff alleges disability beginning December 9, 2013, due to chronic fatigue syndrome, chronic pain, severe sleep apnea, fatty liver disease, asthma, depression, fibromyalgia, and headaches. Tr. 72, 104. On June 28, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 43-71. On September 19, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-26. After the Appeals Council denied his timely request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity between December 9, 2013, alleged onset date, and December 31, 2018, the date last insured. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "bilateral shoulder degenerative joint disease; obesity; obstructive sleep apnea; somatic symptom disorder; major depressive disorder; borderline personality disorder; and fibromyalgia." Id. At step three, the ALJ found plaintiff's impairments, whether considered alone or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 404.1567(b) except:

> he can occasionally reach overhead bilaterally; he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; he can never operate a motor vehicle for commercial purposes; he is limited to simple, routine tasks; he is limited to simple work-related decisions; he can occasionally respond appropriately to

supervisors, coworkers, and the public; the claimant's time off task can be accommodated by normal breaks.

Tr. 19.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as photocopy machine operator, collator operator, and marker. Tr. 25-26. Accordingly, the ALJ concluded plaintiff was not disabled. Tr. 26.

## DISCUSSION

Plaintiff argues that the ALJ erred by discounting the following evidence: (1) his testimony; (2) the lay testimony; and (3) the opinions of primary care physician Hsiang-Sen Yeh, M.D., and mental health counselor Nicholas La Barre.

### I. Plaintiff's Testimony

Plaintiff argues the ALJ erred by failing to give legally sufficient reasons to reject his testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear, and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which. . . testimony is not credible and what evidence suggest the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified he was unable to work due to severe migraines, impaired memory, failing joints, and "chronic fatigue, fibromyalgia, chronic pain." Tr. 52-54. Plaintiff testified further that his daily activities are limited; if he does not wake up with excess fatigue, migraines, and flu-like symptoms, "he tr[ies] to do whatever I can." Tr. 54-55. On good days this includes walking his dog around the block with stops for rest, putting dishes in the dishwasher and clothes in the washing machine, and occasionally vacuuming the lower level. Tr. 55-57. Plaintiff noted he calls himself the "half an hour man" because he can engage in activities or sit for less than 30 minutes prior to the onset of spasms which require him to lay down. Tr. 57, 60-61.

During the day, plaintiff stated he is "always laying down" and the pain is constant. Tr. 59. For example, if he goes on a walk, he must stretch out on the couch for a couple of hours afterwards to ameliorate his elevated pain levels. Tr. 56. He also discussed the need to lay on his left side on the couch during the day to alleviate pain from his right side that develops overnight. Tr. 58-59. Every two weeks, plaintiff goes grocery shopping with his mother in law so she can assist with bagging items, loading them into the car, and taking them into his home. Id. Plaintiff testified this activity causes him to be "down for the count" the following day. Tr. 60.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical record and other evidence in the record for reasons explained in this decision." Tr. 18-20. Specifically, the ALJ cited to plaintiff's daily activities and the objective medical evidence. Tr. 20-21.

Notably, the ALJ found that plaintiff's "allegations of disabling symptoms are inconsistent with his daily activities." Tr. 21. An ALJ may discredit a claimant's testimony when he or she reports activities that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," even if "those activities suggest some difficulty functioning." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

Substantial evidence supports the ALJ's findings in the case at bar. As the ALJ denoted, plaintiff reported activities to his providers that are in excess of his testimony at the hearing. For instance, the record reflects that plaintiff completed yard work (including working with tree limbs and a leaf blower), traveled intermittently to Grants Pass, walked daily in 2015 and on a weekly basis thereafter, attended a music event, and participated in tai chi and water aerobics. Tr. 290, 297, 309, 332, 334, 457, 496, 535, 545, 566. Plaintiff also indicated that he felt better with increased physical activities. Tr. 435. Finally, plaintiff reported going out of town twice for work.[2] Tr. 325, 327. As the ALJ reasonably concluded, this evidence undermines plaintiff's testimony that he is exceedingly physically limited even on good days.

---

[2] Plaintiff authored a letter to the Appeals Council in October 2017 explaining that he has not worked since 2013 and only told his doctor he was working out of town to get an early refill of his narcotic pain medications. Tr. 268-69.

Page 5 – OPINION AND ORDER

The ALJ also resolved that "the objective medical evidence does not support the claimant's allegations of a disabling level of functioning." Tr. 20. In support, the ALJ cited to portions of the record where plaintiff was not compliant with mental health medication and treatment, but upon becoming compliant, experienced improvement. Id. An ALJ may rely on a claimant's unexplained or inadequately explained failure to follow treatment recommendations in evaluating testimony regarding the intensity and persistence of symptoms. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

As of January 2014, plaintiff was not taking antidepressants and his depression was "uncontrolled due to noncompliance." Tr. 335-336. A subsequent chart note indicates he was "much better by getting back to medicine." Tr 331. His antidepressant was later increased, and plaintiff commented that his depressive disorder was "much improved and [he] has been able to work." Tr. 325, 327-28. His provider rated his depression as controlled on his current medication shortly thereafter. Tr. 316.

In November 2015, plaintiff's doctor recommended counseling. Tr. 472. Although plaintiff agreed he needed counseling, he did not obtain any services until August 2016, when he began treatment with Mr. LaBarre. Tr. 494, 497. After attending counseling regularly, plaintiff noted in November 2016 that he "feels more relaxed and less anxious with counseling and he likes the service." Tr. 504.

Regarding physical symptoms, the ALJ noted several instances in the record where plaintiff reported good pain control with his then current medication regime, which allowed plaintiff to complete his daily activities. Tr. 291, 304, 325, 336, 478, 482, 486, 490, 511.

Therefore, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony concerning the extent of his impairments. The ALJ's

evaluation of plaintiff's testimony is affirmed.

**II.     Lay Witness Testimony**

Plaintiff contends the ALJ erred in crediting but not incorporating the lay witness testimony of Rick M., a friend, and Anthony H., a handyman and former coworker.[3] The ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. Nguyen v. Charter, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

In May 2017, Rick M. completed a written statement indicating plaintiff "just doesn't feel well enough to do even the simplest activities." Tr. 255. Also in May 2017, Anthony H. wrote a statement on behalf of plaintiff's claim. Tr. 258. Anthony H. detailed working with plaintiff at Western Pneumatics and discussed his current perception of plaintiff's daily life: "he doesn't leave his home, he is usually always laying down on the couch, he is in pain sometimes mild to severe, he has problems bending over, and lifting things up, and always seems exhausted, these are things I witnessed when I'm around him." Id.

The ALJ gave "little weight" to the third-party statements because they were inconsistent with the record and did not provide specific quantifiable functional limitations. Tr. 24. Even assuming the ALJ erred in addressing the lay testimony, such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) ("[A]n ALJ's [error in assessing] lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims.") (citation and internal quotations omitted). The testimony of Rick M. and Anthony H. is substantively similar to plaintiff's

---

[3] In the ALJ's opinion and defendant's brief, Anthony H. is referred to as "Dr. H." Tr. 24. There is no evidence this is the correct designation, so the Court omits the title here.

subjective symptom statements. Compare Tr. 57, 59-61 with Tr. 181-82, 525, 528. As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony and these reasons are equally applicable to the lay witness statements. Critically, plaintiff's daily activities and medical records undermine both his own and the lay witness testimony. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as the claimant's discredited subjective reports); see also Molina, 674 F.3d at 1122. Thus, reversal is not warranted in regard to this issue.

### III. Medical Opinion Evidence

Plaintiff asserts the ALJ erred by failing to provide legally sufficient reasons to discount the medical opinions of Dr. Yeh and Mr. LaBarre.[4] There are three types of physician opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

---

[4] As addressed in greater detail below, because Mr. LaBarre "was working closely with, and under the supervision of" Steven Rolnick, Ph.D., at all relevant times, his opinion it that of an "acceptable medical source." Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011).

Page 8 – OPINION AND ORDER

### A. Dr. Yeh

Plaintiff initiated care with Dr. Yeh in January 2014 for treatment of chronic pain, chronic fatigue, obesity, depression, obstructive sleep apnea, somatic symptom disorder, and fibromyalgia. Tr. 32, 288-339, 425-58, 472-518. Plaintiff saw Dr. Yeh approximately once a month. Id.

In December 2015, Dr. Yeh completed a "Physical Residual Functional Capacity Assessment" in support of plaintiff's disability claim. Tr. 463-70.[5] Dr. Yeh opined that plaintiff could: frequently lift/carry ten pounds; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never balance; push and/or pull (including operation of hand and/or foot controls) on a limited basis in both the upper and lower extremities; stand and/or walk for less than two hours total in an eight-hour workday; and sit for less than six hours total in an eight-hour workday. Tr. 464-65. The doctor indicated that plaintiff's "diffuse pain in muscles and joints [caused his] limited capability." Tr. 465. Specifically, Dr. Yeh attributed the aforementioned functional restrictions to plaintiff's "significant chronic diffuse pain" that would "cause intolerance of prolonged exertion and has been in deconditioning." Tr. 464.

In May 2017, Dr. Yeh wrote a letter stating plaintiff "has been under my care for years" and that "his physical capability has been much limited by chronic diffuse pain compounded by fatigue." Tr. 591.

---

[5] Dr. Yeh also completed a "Mental Residual Functional Capacity Assessment." Tr. 459-62. The ALJ rejected that assessment because, in relevant part, it was outside of Dr. Yeh's specialty and he offered no explanation for his opinion. Tr. 22. These are legally sufficient reasons, supported by substantial evidence. 20 C.F.R. § 404.1527(c)(5); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Namely, Dr. Yeh is plaintiff's primary care doctor and although he treated the plaintiff in a holistic manner, he is not a mental health practitioner or specialist in that area. He also did not provide any mental health treatment to plaintiff beyond medication management. Tr. 296. In addition, Dr. Yeh stated that he would defer to a psychologist regarding plaintiff's depression. Id.

The ALJ assigned Dr. Yeh's opinion "partial weight" because it was not consistent with the record as a whole, he lacked program knowledge and offered vague limitations, and his opinion was based on information provided by plaintiff. Tr. 22.

Turning to the first rationale, an ALJ may discredit a physician's opinion when that opinion is incongruent with the record as a whole. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). However, both Dr. Yeh's chart notes and the other medical evidence indicates plaintiff is functionally limited by his pain, which he consistently reported. See, e.g., Tr. 290, 293, 297, 300, 313, 314, 316, 327, 332, 435, 444. Thus, although the ALJ invokes inconsistency between Dr. Yeh's physical RFC and the record, he does not provide substantial evidence.

Next, the ALJ cites to Dr. Yeh's lack of program knowledge, but this is not a legally sufficient reason. See Samples v. Colvin, 103 F.Supp.3d 1227, 1233 (D. Or. 2015) ("The assertions by the ALJ that a [non-examining doctor] is impartial and has knowledge of the Social Security rules are neither legitimate nor clear and convincing reasons regarding why the ALJ should give the [non-examining doctor] substantial weight over [a treating physician].") Dr. Yeh treated plaintiff for several years where he met with plaintiff in person to discuss his medical conditions and observe his behaviors. Tr. 292, 296, 299, 302, 304, 307, 315, 326, 329. As plaintiff's treating physician, Dr. Yeh's lack of "program knowledge" is irrelevant. See Lester, 81 F.3d at 832 (in determining whether a claimant is disabled, an examining doctor's findings are entitled to no less weight when procured by claimant than when they are obtained by the Commissioner).

The ALJ also found that Dr. Yeh did not offer specific, quantifiable limitations, describing his report as "equivocal." Tr. 22-23. Yet an independent review of Dr. Yeh's 2015 opinion reveals

numerous concrete functional limitations that the ALJ was required to address. See, e.g., Tr. 463-65.

Finally, the ALJ rejected Dr. Yeh's opinion based on plaintiff's self-reports. Tr. 22-23. The ALJ specifically cited to Dr. Yeh's statement that "plaintiff is fairly disabled, but I cannot say more than I can find in the image studies and examination I found." Id. An ALJ may reject a treating physician's opinion if that the opinion is premised largely on a claimant's subjective complaints, which the ALJ had properly discredited. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). However, "[a]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199 (9th Cir. 2008).

Here, Dr. Yeh did not call plaintiff's credibility into question or discredit his complaints, and the record is replete with objective evidence to support Dr. Yeh's opinion. See, e.g., Tr. 291, 293, 313, 444, 449, 472, 508. For instance, during Dr. Yeh's examinations, plaintiff was positive for tenderness, fatigue, myalgias, arthralgias, sleep disturbance, continuing body wide tenderness, and dysphoric mood on multiple occasions. Tr. 291, 298, 301, 307, 309, 314, 317, 318, 328, 331, 332, 335, 428, 447, 453. Image studies performed indicated generalized abdominal and pelvic pain. Tr. 337.

Thus, the ALJ committed harmful error by failing to provide a legally sufficient reason, supported by substantial evidence, for discounting Dr. Yeh's physical functional restrictions. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are

"nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's decision is reversed as to this issue.

### B. Therapist La Barre

Beginning in August 2016, plaintiff was treated by Mr. La Barre, who was working under the immediate supervision of Dr. Rolnick. Tr. 525. Plaintiff received counseling from Mr. LaBarre approximately every ten days until April 2017. Tr. 519-86.

At the Initial Mental Health Assessment, Mr. LaBarre and Dr. Rolnick diagnosed plaintiff with "Major depression, chronic" and "pain disorder with psychological factors." Tr. 523. It was also noted that plaintiff was "tense," "tearful," and "wished [he] would just not wake one day." Id. Plaintiff "stood up to relieve pain" and reported pain levels of seven to eight out of ten, with ten being "suicide intensity." Tr. 524.

In May 2017, Mr. LaBarre completed a mental RFC in support of plaintiff's disability claim that was co-signed by Dr. Rolnick. Tr. 588. Mr. LaBarre opined that plaintiff had severe limitations in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 588-89. Mr. LaBarre noted that his assessment was based on plaintiff's "behavior in counseling session and his self-report." Tr. 590.

The ALJ assigned Mr. LaBarre's opinion "little weight" because "he lacks program knowledge and offered no specific objective findings to support his opinion," and plaintiff's mental status "did not reflect the level of dysfunction noted in the form." Tr. 23.

Initially, as discussed previously, Mr. LaBarre's purported lack of program knowledge is not a legally sufficient reason.

Further, contrary to the ALJ's assertion, Mr. LaBarre's opinion is supported by objective findings that reflect a significant level of impairment. Mr. LaBarre's counseling sessions with plaintiff documented myriad clinical findings and mental health symptoms. See [Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014)](#) (a check-box questionnaire "based on significant experience . . . and supported by numerous records is entitled to weight"). For example, Mr. LaBarre's notes reflect problems relating to memory, concentration, depression, and plaintiff's overall ability to manage his symptoms. Tr. 519-86. Indeed, plaintiff reported: feeling mentally blocked, losing his train of thought, "difficulty keeping track of what he is doing," "brain fog," "[my] mind isn't functioning right," and "struggl[ing] with memory." Tr. 526, 537, 555, 560, 582. Mr. LaBarre's clinical observations reflect that plaintiff periodically struggled with hygiene issues and his judgment was, at best, "fair" or "limited." Tr. 553, 519-86. Plaintiff was also observed to be tense, tearful, aggressive, fidgety, restless, and irritable, and he struggled with boundary violations. Tr. 523, 526, 529, 530, 537, 543, 545, 548, 553, 555. Although there were periods where plaintiff experienced "slight" improvements, many such periods were followed by instances of suicidal ideation. Tr. 523, 545, 560, 563, 579. There were likewise periods of regression, such as December 2016 where plaintiff stated this was the "worst he has ever felt." Tr. 553. In total the observations of Mr. LaBarre support the level of dysfunction asserted.

In addition, subjective reports are considered valid evidence in the realm of mental health source assessment. See [Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017)](#) ("the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions

regarding mental illness" because psychiatric evaluations and diagnoses "will always depend in part on the patient's self-report . . . such is the nature of psychiatry") (internal citation omitted).

Thus, the ALJ committed harmful error by failing to provide legally sufficient reasons supported by substantial evidence for rejecting Mr. LaBarre's opinion. The ALJ's evaluation of Mr. LaBarre's opinion is reversed.

## IV. Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits falls within the court's discretion. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014) (except in "rare circumstances," the proper remedy upon a finding of harmful legal error is to remand for further administrative proceedings). The court nevertheless may not award benefits punitively. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred in evaluating the opinions of Dr. Yeh and Mr. LaBarre. The record before this court is nonetheless ambiguous concerning the extent of plaintiff's impairments.

The record reflects that plaintiff had a long relationship with opioids and was considered dependent in August 2015 upon visiting the Corvallis Pain Clinic. Tr. 402. Dr. Yeh also recognized plaintiff had been "off and on opioids for 25 years and on continuous opioids for ~ the past 10

Page 14 – OPINION AND ORDER

years and is primarily dependent on chemical coping." Tr. 429. The ALJ acknowledged Dr. Yeh's opioid dependence diagnosis without discussing the possible impact it could have on plaintiff's functioning and testimony. Tr. 22. Indeed, plaintiff was heavily medicated during the majority of the adjudication period, taking numerous narcotic pain medications in combination with nine other daily medications for a variety of conditions or symptoms. Tr. 405. Although some of plaintiff's allegedly disabling conditions improved during 2014-2015 at the peak of his drug use, others worsened or persisted. Tr. 298, 307, 314, 328, 331.

Significantly, the ALJ wholly failed to distinguish between the period where plaintiff was dependent on or habitually using opioids, and the period after when he had stabilized with Suboxone in October 2015. Tr. 408. Instead, the ALJ heavily relied on inconsistencies in the record that coincided with plaintiff's period of opioid abuse to discredit his hearing testimony. Tr. 20-21. Yet the ALJ is required to consider the type, dosage, effectiveness, and side effects of any medication plaintiff took or has taken to alleviate his pain or other symptoms in accordance with 20 C.F.R. § 416.929(c)(3)(iv).

Given that the majority of the medical opinion evidence is from the period of plaintiff's opioid use and subsequent withdrawal, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon finding of harmful legal error is to remand for further administrative proceedings); see also Cowie v. Comm'r Soc. Sec., 2017 WL 5894190, *7-8 (D. Or. Nov. 29, 2017) (reversing the ALJ's decision and remanding for further proceedings where the record was ambiguous "concerning the extent of Cowie's allegedly disabling physical impairments after she ceased drinking"). The remote date last insured of December 31, 2018, coupled with the unclear impact of plaintiff's narcotic usage, indicates consultation with a medical expert is appropriate. Upon remand, the ALJ must reconsider

the medical evidence, consult with a medical expert, and reformulate plaintiff's RFC and obtain additional VE testimony, if necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 25th day of October, 2019.

                                          /s/ Jolie A. Russo
                                            Jolie A. Russo
                                  United States Magistrate Judge